[No. 5246.]
[No. 2870 C. A.]

SEXTON v. THE NATIONAL LIFE INSURANCE COMPANY.

**Insurance—Mutual Life Insurance—Suicide—Effect of Change in By-Laws.**

A mutual life insurance company issued a policy to plaintiff's husband which provided that it should be void if the insured committed suicide within two years from the date thereof. Shortly after the payment of the second annual premium, the company changed its form of policy by limiting its nonliability in case of suicide to one year, and increased its premium rate one dollar per thousand, but did not change the husband's policy nor collect the additional premium. Thereafter, but prior to the expiration of two years, the insured committed suicide. Held, that such change of new policies did not affect the policy

of deceased, since such additional benefits and advantages could only accrue to the insured by paying .the additional premium.—P. 62.

*Error to the District Court of the City and County of Denver.*

*Hon. Frank T. Johnson, Judge.*

Action by Mary B. Sexton against The National Life Insurance Company, a Vermont corporation. From a judgment for defendant, plaintiff brings error.                                              *Affirmed.*

Mr. FRED R. WRIGHT, for plaintiff in error.

Mr. JOHN T. BOTTOM and Mr. HARRY E. KELLY, for defendant in error.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The defendant in error is what is known as a mutual life insurance company incorporated under the laws of the state of Vermont. On December 7, 1899, it issued a policy upon the life of Edward J. Sexton in favor of Mary B. Sexton, his wife, for $2,000.00. Upon the issuing of the policy, the annual premium was paid, and on December 7, 1900, the premium was paid for the second year. The policy provided, *inter alia,* that it should be void if the insured committed suicide within two years from the date thereof. On January 15, 1901, the board of directors of the company adopted new forms of policy, including the class issued to Sexton, in which the limit of non-liability in case of suicide was changed to one year, and increased the premium rate one dollar per thousand. On April 24, 1901, Sexton committed suicide.

Both parties concede that the company had the power to change its policies in the respect mentioned,

and therefore the only question presented for our determination is whether the change in the clause relating to suicide applied to policies issued prior to January 15, 1901, and made the company liable for death by suicide after the expiration of one year from the issuance of such policy, notwithstanding the express provision therein that it should not be liable if the insured should commit suicide within the period of two years from the date of the contract.

Counsel for plaintiff in error invoke the well-settled doctrine that a mutual insurance company must accord to all its members the same privileges and advantages upon the same terms, subject to the same obligations, otherwise the principle of mutuality, which is the essential feature of such insurance, is superseded or impaired; and insist that, by reason of this principle, the change in the form of the policies on January 15, 1901, inured to the benefit of the plaintiff in error, and the reduction of the period of contestability and exemption of liability for death by suicide applied to the policy in controversy, and rendered it incontestable upon that ground after the lapse of one year from its date.

While the resolution adopted January 15, 1901, does not in terms provide that the changes in the policies should apply only to those thereafter issued, it is presumed that such change was intended to operate prospectively, and will not be given a retrospective effect unless some imperative reason demands such construction.—*Life Indemnity Co. v. Jarman,* 104 Fed. Rep. 638; 1 Cooley's Briefs on Law of Insurance 705-6, and cases cited.

The book of rates and values referred to in the resolution, and therein approved and adopted, contains the statement that such rates and values apply only to policies issued on and after January 1, 1901, and in no case to policies issued prior to said date.

These rates were an increase over those provided in the contracts theretofore in force, and, if given a retrospective operation, would change such contracts in this respect, and compel the insured to pay premiums in excess of the amount he had expressly agreed to pay, and impose upon him a different contract from the one entered into between him and the company, without his consent. This the company could not do, had it so intended. It is well established by the weight of authority that even under an agreement by the insured to be bound by laws thereafter enacted, an insurance company cannot, by amendment or alteration of its laws, impair the obligation of its contracts, or deprive a member of his vested rights. Therefore, accepting the doctrine that a mutual insurance company must accord to its policy holders of a particular class the same privileges and benefits accorded to others of that class upon the same terms, it follows that, to entitle existing policy holders to the benefits and advantages provided in the new policies, they must pay the same premium paid by the holders of the latter, otherwise the principle of mutuality would be violated as to those who paid the increased premiums.

We think that, in the circumstances of this case, the resolution of January, 1901, did not affect the terms of the contract as expressed in the policy under consideration, and that the provision making the same void in case the insured committed suicide within two years was in force at the time Sexton committed suicide, and the court below correctly held that plaintiff in error was not entitled to recover in this action.

The judgment is affirmed.           *Affirmed.*

Chief Justice Steele and Mr. Justice Campbell concur.